**SEIBERLING LATEX PRODUCTS CO. v. COE, Commissioner of Patents.**

No. 25031.

District Court of the United States for the District of Columbia.

April 27, 1945.

Edmund H. Parry, Jr., of Washington, D. C. (Gordon C. Mack, of Akron, Ohio, of counsel), for plaintiff.

W. W. Cochran, Sol., United States Patent Office, of Washington, D. C., for defendant.

DUNCAN, District Judge.

This suit was instituted by plaintiff as assignee, in the United States District Court for the District of Columbia, to authorize the defendant, the Commissioner of Patents, to issue to the plaintiff, a patent based upon Application No. D–99,104.

Plaintiff is a corporation organized and existing under the laws of the State of Ohio, and seeks relief under Section 4915 of the Revised Statutes, 35 U.S.C.A. § 63.

The subject of the application is described as a "new, original and ornamental design for playing ball" and referred to by applicant in his testimony as "An Educational Play Ball". It will be referred to herein as the "Glass" patent.

The ball is inflated, made of latex and is manufactured in sizes five and six inches in diameter. Before the ball is lettered or decorated, it is white. Around the equatorial center of the ball (exhibit 4) is painted a red stripe about five-eighths inch wide. On each side of the red stripe in what may be termed the "temperate zones", are blue letters three-fourths inch in height, some of which are broken, i. e., the lines forming some of the letters are broken or divided at irregular places, thus permitting the white of the ball to show through the open or broken line, and so spaced as to extend entirely around this section of the ball.

Around the "polar region" there are arranged numerals from 1 to 0 three-fourths inch in height and exactly and evenly spaced so as to extend completely around that surface of the ball. The lines form-

ing some of those numbers are divided or broken the same as those forming the letters.

The same design is carried out in the other half of the ball. The letters and the numbers are accurately and evenly balanced in both halves of the ball and occupy exactly relative positions. As one views the ball lying in a fixed position, the numbers and letters in one-half of the ball appear in an upright position, and the letters and numbers in the opposite portion of the ball appear in an upside down position.

To place the letters upon the surface of the ball it is held in what is termed a "mask"—a metallic "gadget" just the shape and size of the ball. It is divided into halves and secured at the top by means of a hinge. It is placed over the ball and held at the bottom by handles provided for that purpose. On the surface of the "mask", at the proper places, there is formed the shapes of the letters and numbers to appear on the surface of the ball, and through the opening forming the letters the paint of whatever color desired is sprayed by means of a mechanical sprayer. More simply described, the "mask" is a stencil clamped around the ball and the paint is sprayed through the opening forming the letters and numbers. The solid line around the equatorial center is placed on the ball after the "mask" is removed. The exhibit offered in evidence is a combination of red, white and blue, the surface of the ball being white, the equatorial line red, the letters blue, and the numerals red.

It is contended by the plaintiff that the combination or arrangement of the letters and numerals and the color combination is new in design, attractive to the eye, and not heretofore discovered, and therefore patentable as to design.

The Commissioner rejected the application "because unpatentable for lack of design invention over the reference and for the reasons of record: That, more particularly, the basis of the final rejection was the following U. S. patents: Farley 280,807, Reimert 2,017,473, Eddy D-51722, and Griffiths D-61805; and Items 48T3123 and 48T3148 of pages 34 and 35 of the Montgomery Ward Christmas catalog for 1937, in view of which art the Primary Examiner held that there was no invention in providing conventional letters and numerals in the manner claimed:".

The Farley patent 280,807 applies to "Croquet balls (wood) mallets, wickets and stakes and/or either but particularly to balls made luminous by the application of a luminous substance 'to enable the balls to be more easily seen "in the cool of the evening" ' ". The balls and mallets have opaque lines "as a distinguishing mark". Other than the opaque lines around the balls and mallets for distinguishing purposes, I can find no similarity whatsoever between that patent and the "Glass" application in question here. In fact, at the trial, the defendant did not contend that there was any similarity.

The same is true with respect to the Reimert patent 2,017,473. This patent refers to a rather complicated game device composed of a "ball-supporting block". Numerous balls were used, each ball having painted upon its surface several large letters. The box or ball-supporting block was so designed that when the balls were placed therein, words might be formed or games of chance played. Like the Farley patent, I can find no similarity to the "Glass" Play Ball.

The Griffiths patent has two lines or ribs around the equatorial center, one on each side of a seam or rib exactly dividing the ball, and in the upper space are arranged letters "A" to "Z", but these letters are not spaced in such manner as to extend entirely around the ball; they extend only part way around, there is left considerable space between the "A" and "Z".

In the space below are numerals from 1 to 0. These numerals are so balanced that the numeral "1" is matched with and beneath the letter "B", and "0" is beneath the letter "K". In the "temperate zone" both above and below the center are numerous animals, horses, camels, goats, bears, birds, etc. In the "polar region" is Noah's Ark. Around this region and the Ark are two circles or ribs. The animals, the Ark, the letters and the numbers are molded into the fabric, and it is contended, and I think with justification, that the animals and other designs in the rubber ball, which, as above stated, are molded into and are a part of the fabric, and therefore, not attractive and distinguishable as such beyond a short distance from the eye.

The Eddy patent likewise is a rubber ball. Around the equatorial center is found all of the letters of the alphabet,

spaced almost exactly as are the letters in the "Glass" application. In the ball covered by the Eddy patent, the letters are molded into the fabric. The entire surface of the ball above and below the equatorial line is solidly covered by small stars of equal size and obviously of the same color as the fabric of the ball. They likewise are molded into the fabric.

The Montgomery-Ward ball, design 48T3148 which is not patented, is approximately the same size as the "Glass" ball and the balls described in the Griffiths and Eddy patents, and is shown in Defendant's Exhibit 1 and Plaintiff's Exhibit 2, as a white ball with a black line around the equatorial center with four narrower zigzag lines of the same color extending around the ball in both temperate zones. The polar region is surrounded by diamond-shaped blocks of the same color. There are no letters or numbers on the design.

The Montgomery-Ward design 48T3123 shown in Defendant's Exhibit 1, is an inflated ball. The description in Montgomery-Ward's catalog says "It is a rubber ball with bright clown decoration in two colors, red and white." The cut in the catalog indicates that the surface of the ball is red with a white stripe around the equatorial surface, and in the zones opposite the white stripe is to be found pictures of clowns in white upon the red background. This design like the other Montgomery-Ward design, is not patented, and no letters or numerals appear upon the surface of the ball.

Defendant contends that plaintiff's arrangement of the letters and numerals on the "Glass" design is simply a rearranging and grouping of the letters and numerals shown in the Eddy and Griffiths patents, is not new and·novel in design, and therefore, not patentable.

Certainly there is nothing new and nothing novel about the design of either of the Montgomery-Ward balls. One is composed simply of zigzag lines on either side of a solid black line and the connected diamond-shaped blocks around the "polar region". It is not novel and cannot be said to represent any inventive genius.

With respect to the other Montgomery-Ward design, i. e., a red ball with a white equatorial line and ·clowns, I think it is not materially different from many other types of balls which are shown in the catalogs

introduced in evidence. It follows pretty generally a pattern to be found in many other types of play balls, particularly those shown in the Miller catalog.

■ A design patent must involve exercise of inventive genius—and more than mere skill in the draftsman. Whether or not the design is attractive is not the way in which it appears to the expert, but to the ordinary observer, and certainly the eyes through which the writer of this opinion views the exhibits and the "Glass" design, are those of an ordinary observer and in no respect, expert.

There certainly is no indication of inventive genius or anything unusual in the attractiveness of the arrangement of the letters on either the Griffiths or the Eddy patent. They are simple A B Cs and 1–2–3–4s appearing on the Griffiths patent, without any attempt at balancing or spacing to add attractiveness, and on the Eddy patent, while the letters are evenly spaced around the equatorial center, they are molded into the fabric and must reasonably be expected to follow the color of the band around this surface. So far as the letters and numerals are concerned, there is greater distinction between the "Glass" design and either the Griffiths or the Eddy patent, than there is difference between the Eddy and Griffiths patents.

The design of the letters and numerals, the balancing of each with the other upon the surface of the "Glass" design and the manner in which the letters and numerals are formed, is distinctive and immediately attracts the eye at most any distance at which the letters and the numerals, each of which is approximately three-fourths inch in height, may be seen.

From my own observation of the "Glass" design·and the other exhibits, the "Glass" design has much greater eye-appeal.

■ Considerable testimony was introduced to show that the demand by the trade for the "Glass" design was very much greater than any other of the designs shown in evidence. This of course, of itself, is not sufficient to justify the granting of a patent, but certainly it is persuasive in determining whether or not the design is new and novel and appealing to the eye. The evidence shows that the 10¢ stores and other stores handling novelties were the greatest purchasers of this type ball, and certainly the persons who purchase such commodities for a large number

of stores are judges of what is likely to be attractive to consumers.

The mere regrouping of numerals and letters as shown upon the Eddy and Griffith patents would not justify the granting of a patent but Glass has done more than that, it seems to me, and has shown inventive faculties in the method and the manner or the forming of his letters and numerals and the grouping upon the ball.

I am convinced that the "Glass" design is new, original and ornamental and that the plaintiff is entitled to a patent.

Decree accordingly.